UNITED STATES DISTRICT COURT
for the
District of North Dakota

| | |
|---|---|
| Estate of Russell Charette,<br>Nancy Charette, Personal Representative<br><br>            Plaintiff,<br>vs.<br><br>United States of America<br><br>            Defendant. | Case No.<br><br>**COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL ACTION** |

Jurisdiction and Venue

1. This action arises under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1346(b)(1) because Plaintiff seeks money damages for personal injury and death caused by the negligent acts and omissions of employees of the United States acting within the scope of their employment under circumstances in which a private person would be liable under the laws of the State of North Dakota.

2. Venue is proper in the District of North Dakota pursuant to 28 U.S.C. § 1402(b) because the acts and omissions giving rise to this claim occurred in North Dakota.

3. On April 4, 2025, within two years of the April 24, 2024 death of Russell Charette, Plaintiff presented a written administrative tort claim to the United States Department of the Interior pursuant to 28 U.S.C. § 2675(a), asserting wrongful death and survival damages in a sum certain.

4. The Department of the Interior denied the claim by letter dated February 19, 2025.

5. Plaintiff timely sought reconsideration pursuant to 28 C.F.R. § 14.9(b). By letter dated July 29, 2025, the Department of the Interior issued a final denial of reconsideration

6. On September 15, 2025, Nancy Charette was duly appointed Personal Representative of the Estate of Russell Charette. A copy of the Order of Appointment is attached as Exhibit A.

7. On September 24, 2025—well within six months of the July 29, 2025 final denial—Plaintiff commenced a civil action in this Court asserting the claims set forth herein.

8. That action was voluntarily dismissed without prejudice on January 21, 2026, prior to service of an answer and without adjudication on the merits order of dismissal. Plaintiff now re-files this action.
9. The requirement of 28 U.S.C. § 2401(b) that an action be "begun" within six months of final denial was satisfied when Plaintiff timely filed the September 24, 2025 complaint.
10. The prior voluntary dismissal pursuant to Rule 41(a)(1)(A)(i) did not constitute an adjudication on the merits and did not extinguish compliance with § 2401(b).
11. Alternatively, to the extent the Court determines that the present action must independently satisfy the six-month filing requirement, Plaintiff invokes equitable tolling principles as recognized in United States v. Kwai Fun Wong, 575 U.S. 402 (2015). Plaintiff acted diligently in filing the original federal action within the statutory period and voluntarily dismissed that action to address anticipated jurisdictional objections relating to representative capacity under evolving Eighth Circuit precedent. The United States suffered no prejudice from that dismissal.
12. All administrative prerequisites to suit under 28 U.S.C. § 2675(a) have been satisfied.

## PARTIES

13. Plaintiff Nancy Charette is the duly appointed Personal Representative of the Estate of Russell Charette ("Charette"), who at the time of his death was a resident of the Turtle Mountain Indian Reservation in North Dakota. Charette is survived by close family members (the "survivors") who were dependent on him and for whose benefit this claim is brought.
14. Defendant is the United States of America, which is sued under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680, for the negligent acts and omissions of its employees. At all relevant times, the Turtle Mountain Tribal Police Department was operating under a self-determination contract (Public Law 93-638) with the U.S. Bureau of Indian Affairs ("BIA"), and its law enforcement officers – including the officer involved in the incident described below – are deemed federal employees for purposes of FTCA liability. Accordingly, the United States is the proper defendant in this action.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1346(b)(1), in that Plaintiff seeks money damages against the United States for personal injury and wrongful death caused by the negligence of a federal employee acting within the scope of his duties. Plaintiff has exhausted all administrative remedies as required by 28 U.S.C. § 2675. Specifically, on August 7th, 2024, Plaintiff filed a Standard Form 95 administrative claim with the appropriate federal agency, and

that claim was formally denied by the BIA in a letter dated February 19th, 2025. This suit is timely filed within six (6) months of receipt of the denial, in accordance with 28 U.S.C. § 2401(b). Venue is proper in the District of North Dakota under 28 U.S.C. § 1402(b) because the acts and omissions giving rise to the claim occurred in this district, and because Plaintiff resides in this district.

## FACTUAL BACKGROUND

16. On or about April 24th, 2024, in the afternoon, a high-speed police pursuit took place on a paved, and then public gravel road on the Turtle Mountain Reservation in Rolette County, North Dakota. The pursuit was initiated by a law enforcement officer (hereinafter "Officer"), employed by the Turtle Mountain Tribe under a BIA Public Law 93-638 contract, acting in the scope of his contracted law enforcement duties.

17. The Officer was attempting to stop a fleeing vehicle that was being driven by a suspect. Charette was a passenger in that fleeing vehicle. Charette can be seen attempting to jump out of the vehicle by opening the door earlier in the pursuit. Fearing for his life as the suspect's vehicle sped recklessly, Charette exited or fell from the vehicle while it was still in motion, coming to rest on or near the roadway. He attempted to get to a place of safety away from the road.

18. The unpaved gravel road surface during the chase created a massive cloud of dust behind the suspect's vehicle. This dust cloud severely impaired visibility for the pursuing Officer. As the chase continued, the Officer's vision was effectively obscured – he was "blinded" by the dust and could not clearly see the road ahead or any hazards on or alongside the roadway. Despite these dangerous conditions, the Officer persisted in the high-speed pursuit directly into the dust cloud. The fleeing suspect's vehicle came to a stop next to Charette after he had gotten out. Unable to see Charette or the road due to the heavy dust, the Officer drove his police unit at high speed into the vicinity where Charette was located.

19. In gross disregard of the obvious risk, the Officer did not slow down or terminate the chase. As a result, the Officer's vehicle struck Charette on or near the roadway at a high rate of speed. The impact caused severe injuries to Charette. Charette suffered catastrophic blunt-force trauma. Emergency medical assistance was summoned. Charette was transported to Quinton Burdick Memorial Hospital after first being treated by first responder by an arriving ambulance, but he succumbed to the injuries and was pronounced dead shortly thereafter. The cause of death was the traumatic injuries inflicted by the impact of the Officer's vehicle. No law enforcement personnel or other members of the public were injured in the incident aside from the decedent. The fleeing driver was apprehended at the scene.

20. At all times relevant, the Officer had a duty to operate his vehicle with due regard for the safety of all persons, including the suspect, passengers, and any bystanders. This duty is reinforced by official BIA policy governing high-speed pursuits. According to BIA Office of Justice Services policy, officers must terminate a pursuit when the risks to life and public safety outweigh the need to immediately apprehend the suspect. In particular, BIA policy provides that "[w]hen the risks of pursuit exceed the need to capture the offender, the officer must discontinue pursuit." This mandatory safety rule recognizes that the protection of human life is the paramount consideration in law enforcement driving tactics. Officers are not permitted discretion to continue a dangerous chase in conditions that would jeopardize life or safety beyond the value of catching the suspect. Indeed, BIA policies further direct that a supervising officer will immediately terminate any pursuit when continuation poses an unreasonable risk to the public, officers, or suspects compared to the benefit of capture. These pursuit directives applied to the Officer during the incident.

21. The Officer violated these mandatory policies by failing to terminate the pursuit when it became unreasonably dangerous. Once the rising gravel dust blocked his vision, any reasonable officer – adhering to BIA's safety requirements – would have discontinued the chase to avoid exactly the kind of tragedy that occurred here. Instead, the Officer breached a specific, mandatory duty by continuing to drive blind at high speed. By plowing ahead despite being unable to see Charette or other potential obstacles, the Officer violated a prescribed ministerial obligation aimed at protecting lives. The risks of continuing the pursuit at that point far outweighed any law enforcement necessity, yet the Officer chose to press on. This choice was not a permissible exercise of judgment under the circumstances, but rather a clear violation of a hard-and-fast rule ("the officer must discontinue pursuit" when risks exceed the need). In so doing, the Officer abandoned the standard of care and safety demanded of him.

22. Because the Officer's conduct violated a specific mandatory directive (the BIA pursuit termination policy), the United States cannot rely on the "discretionary function exception" in 28 U.S.C. § 2680(a) to escape liability. The discretionary function exception does not protect government conduct that fails to adhere to a mandatory policy or regulation. Here, the Officer had no legitimate discretion to continue the pursuit once he was blinded by dust and the risk to life became too great – he was required by policy to stop. His failure to follow this mandatory safety rule removes this case from the discretionary function exception, as the challenged conduct was not the result of a permissible exercise of policy judgment but rather a negligent violation of an established safety

standard. Thus, the United States' waiver of sovereign immunity under the FTCA applies fully to this claim.

## COUNT I

## WRONGFUL DEATH PURSUANT TO N.D.C.C. § 32-21-01

23. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth under this count. Under North Dakota law, a death caused by the wrongful act or neglect of another gives rise to an action for damages against the responsible party, as if the deceased person had survived. At all relevant times, the Officer (and hence Defendant United States, via respondeat superior under the FTCA) owed Charette a duty to act with reasonable care for his safety. This included the duty to refrain from continuing a high-speed vehicular pursuit under conditions that posed an unreasonable risk of serious harm to persons on or near the roadway. The Officer also had a duty to comply with all applicable law enforcement policies designed to protect the public, including the pursuit termination policies described above.

24. The Officer breached his duties of care through negligent and wrongful acts and omissions. Negligence of the Officer is evidenced by, inter alia: (a) continuing to drive at high speed in pursuit despite being unable to see the road ahead due to dust; (b) failing to halt or slow the pursuit when vision was obscured and dangers to human life were present; (c) striking Charette with the police vehicle, which would have been avoided had the Officer exercised due care and obeyed mandatory pursuit termination requirements; and (d) generally failing to operate his vehicle in a safe manner consistent with training and policy under the road and visibility conditions. The Officer's conduct fell below the standard of care expected of a reasonable law enforcement officer under the circumstances. It was foreseeable that such reckless continuation of the chase in blind conditions could lead to a collision with a pedestrian or bystander such as Charette.

25. The Officer's negligent actions and omissions were a direct and proximate cause of Charette's death. But for the Officer's failure to terminate the pursuit or otherwise drive with appropriate caution, Charette would not have been run over and killed. Charette experienced conscious pain, fear, and suffering in the moments before his death, and his life was tragically cut short. As a further direct and proximate result of the Officer's negligence, Charette's survivors have suffered and will continue to suffer profound damages. These damages include but are not limited to loss of Charette's love, society, companionship, comfort, and guidance; the mental anguish and grief of his family; loss of the financial support and services that Charette would have provided; and

26. expenses such as funeral and burial costs. Under N.D. Cent. Code § 32-21-01, Defendant United States is liable to Plaintiff for all such compensatory damages sustained by the heirs and next-of-kin of Charette as a result of his wrongful death. The United States' liability is to the same extent a private person would be liable under North Dakota law in similar circumstances, pursuant to 28 U.S.C. § 1346(b). No exception to liability under the FTCA applies.

## COUNT II
### SURVIVAL ACTION PURSUANT TO N.D.C.C. § 28-01-26.1

27. The Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

28. Prior to his death on or about April 24, 2024, Charette sustained serious and painful injuries as a direct and proximate result of the wrongful acts and omissions of the Defendants as described above.

29. Charette survived for a period of time following the incident, during which he experienced conscious pain, suffering, emotional distress, and medical treatment. He was transported to and received care at Quentin N. Burdick Memorial Health Care Facility in Belcourt, North Dakota, before succumbing to his injuries on or about April 24, 2024.

30. Pursuant to N.D.C.C. § 28-01-26.1, the right of action for personal injuries suffered by Charette prior to his death survives and is maintainable by the duly appointed Personal Representative of his estate.

31. As such, Plaintiff, in his capacity as Personal Representative, brings this action to recover damages for the pain and suffering, medical expenses, and other compensable injuries sustained by Charette prior to death.

32. Plaintiff seeks all damages recoverable under North Dakota law for survival actions, including but not limited to pre-death pain and suffering, medical expenses, and any other damages permitted by law.

## PRAYER FOR RELIEF

32. WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendant, the United States of America, awarding:

1. **Damages:**

Monetary damages in an amount to be determined at trial, for the benefit of Charette's survivors, including but not limited to:

    a. Loss of companionship, society;

    b. Emotional distress of the survivors;

    c. Lost economic support and services;

    d. Conscious pain and suffering endured by Charette prior to death; and

    e. wrongful death

    f. All other damages allowable under North Dakota law and proven at trial;

2. **Costs and Interest:**

An award of reasonable costs and disbursements incurred in bringing this action, as permitted by law, and any applicable post-judgment interest (excluding pre-judgment interest not allowed against the United States);

3. **Such Other Relief as the Court Deems Just and Proper:**

Such Other Relief as the Court Deems Just: Any and all further relief, at law or in equity, to which Plaintiff and the survivors may show themselves justly entitled.

Dated: February 22, 2026


Respectfully submitted,


*/s/: Reed A. Soderstrom*

**Reed A. Soderstrom (ND#04759)**

Counsel for Plaintiffs

Soderstrom Law, P.C.

1611 Glacial Dr.

Minot, ND 58703